UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARR A. ADAMS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN COLVIN,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | No.  2:24-cv-01530-EFB (SS)<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Titles II and XVI of the Social Security Act. ECF No. 1. Pending before the court are the parties' cross-motions for summary judgment. ECF Nos. 15 & 19[1]. For the reasons provided below, plaintiff's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted.

**I.     Background**

In December 2018, plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, alleging disability beginning April 17, 2018. Administrative

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings in this action, including judgment, pursuant to 28 U.S.C. 636(c)(1). ECF No. 9.

Record (AR) 23, 81-82.[2] Plaintiff alleged disability due to major depression and generalized anxiety. AR 81-82, 105. Plaintiff's application was denied on June 25, 2019, AR 105-109, and her request for reconsideration was denied on September 20, 2019. AR 112-117. She requested a hearing, which was held by telephone on August 29, 2022. AR 37-68. On September 13, 2022, the ALJ issued a decision finding plaintiff not disabled. AR 20-36. Plaintiff sought review, which was denied on August 21, 2023, AR 9-13, and, on May 30, 2024, she initiated the instant action. ECF No. 1.

## II.  Legal Standard

### A. The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to

---

[2] Defendant lodged the administrative record on October 7, 2024. ECF No. 12.
[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

2

perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

*Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). At each of these five steps, "the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In steps one through four, the burden of proof is on the claimant. *Ford*, 950 F.3d at 1148. A claimant establishes a prima facie case of qualifying disability once he has carried the burden of proof from step one through step four. *Ibid*.

Before making the step four determination, the ALJ first must determine the claimant's RFC. *Batson*, 359 F.3d at 1194; *see* 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 404.1545(a)(1). A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g); *Batson*, 359 F.3d at 1194. If the claimant can perform other work in the national economy, then the claimant may not be found to be disabled. *Ibid.*

////

////

**B. Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, the court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart (Thomas)*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)); *see also Dickinson v. Zurko*, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co. (CalPortland)*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless, *Stout*, 454 F.3d at 1055-56, and the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

In conducting its analysis, the "reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The court may not affirm the ALJ on a ground upon which she did not rely; rather, the court may review only the reasons stated by the ALJ in her decision. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Further, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

### III.  The ALJ's Findings of Fact and Conclusions of Law

In his September 13, 2022 decision, the ALJ found plaintiff not disabled and made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since April 17, 2018, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: depressive disorder; anxiety disorder; obsessive compulsive personality disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Work with simple tasks. Only occasional interaction with the public, in the work setting. Only occasional interaction with coworkers and supervisors. No tandem tasks involved. Work with end of the day production requirements and no other periodic or hourly quotas.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 30, 1977 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual

functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 17, 2018, through the date of this decision (20 CFR 404.1520(g)).

AR 25-31.

Relative to the ALJ's fifth finding, concerning the scope of plaintiff's RFC, the ALJ explained the basis of his conclusions:

> In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. I also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.
> In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities. The claimant also reported that she has trauma responses to stressful situations affecting her ability to work.
> The claimant reported that she is unable to work because she is limited in her time and needs to spend all of her time of basic activities of daily living. The claimant reported that it takes her longer to do things than other people and she believes it is related to a diagnosis of obsessive compulsive personality disorder (OCPD). The claimant reported that she was treated in therapy for her OCPD as well as PTSD. The claimant also reported that she was treated with Prozac which helps to regulate her mood, nut made her lethargic. However, she stated that the medication did not affect her OCPD or her need to spend time on daily living activities. The claimant reported that depression affects her ability to interact with others. She estimated that she has 15 to 25 bad days per month. She stated that unexpected things or plans cause her anxiety. The claimant reported that she drives to the dentist, stores, and doctor. The claimant reported that she tries to go to places that do curbside shopping. The claimant reported that she cooks for herself, attends to her personal care, cleans up after herself, does yoga and

meditation, exercises, and does laundry. The claimant reported that she enjoys knitting, but does not have time to do so. The claimant stated that it generally takes her 7 hours to get out of the house. (Testimony).

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

The claimant has a diagnoses of major depressive disorder, generalized anxiety disorder, and obsessive-compulsive personality disorder. (Exhibit 2F/3). The claimant engaged in mental health treatment following a major depressive episode triggered by the death of her boyfriend. (Exhibit 2F/1). The claimant then moved in with her mother and stepfather, and the transition was stressful, and reportedly increased her depression. (Exhibit 2F/2). The claimant also reportedly maintains rigid control of her external environment and becomes very anxious, agitated and irritated with whomever has disturbed her sense of order. (Exhibit 2F/2; 7F/5, 43). The claimant reported symptoms of restlessness, poor concentration, fatigue, irritability, intrusive thoughts, and depressed mood. (Exhibit 3F/2; 6F/36; 7f/5). She also reported compulsiveness, occasional panic, and social anxiety. (Exhibit 6F/20). The claimant treated with Zoloft and noted some fatigue and concentration issues while on the medication. (Exhibit 4F/19).

The record indicates that after a year of engaging in psychotherapy, the claimant had some progress, with a decrease in depressed affect and feelings of grief. (Exhibit 2F/3). Improvement with anxiety issues was also noted. (Exhibit 2F/3). At times, the claimant exhibited low mood, tearfulness, or was irritable. (Exhibit 6F/34; 7F/37). However, overall, the claimant generally presented as cooperative, with appropriate dress and grooming, normal memory, intact judgment, average intellect, normal attention and concentration, normal thought process, normal speech, and good insight. (Exhibit 3F/5; 6F/21, 24, 26, 28, 31; 7F/7, 19, 22, 24, 26, 41). In January 2020, the claimant denied obsessive compulsive habits, depressed mood, excessive anxiety, and issues with memory and concentration. (Exhibit 4F/23). Records indicate that the claimant experienced good results with Zoloft. (Exhibit 4F/16, 19, 21; 5F/10; 6F/27; 7F/25). The claimant reported that episodes of irritability significantly decreased when taking sertraline. (Exhibit 6F/20). March 2021 relate that the claimant reported normal situational anxiety with which she is able to cope. (Exhibit 6F/27). Records from November 20211 relate that the claimant was self-tapering off of Zoloft. (Exhibit 7F/47). Despite discontinuing treatment with Zoloft, the claimant reported that she was feeling stable. (Exhibit 7F/55, 60). Additionally, on examination, the claimant was alert and oriented, cooperative, with normal speech, good mood, goal-directed thought process, and no suicidal or homicidal ideation. (Exhibit 7F/55, 60).

The claimant has been limited to simple tasks in order to accommodate limitations in understanding, remembering, or applying information. The claimant's requirement to interact with others has also been limited due to moderate limitations in the category of interacting with others. She is limited to occasional interaction with co-workers, supervisors and the general public. With

respect to concentrating, persisting, or maintaining pace, both pace and persistence are addressed by requiring that work have no periodic or hourly quotas and no tandem tasks. Finally, the prohibition on production requirements in combination with the limitations on interaction with others serves to create a work environment that is lower in stress than that which would require fast-paced work and greater interaction with others, and therefore accommodates limitations in adapting and managing.

In addition to the above-referenced findings, the record shows that the claimant retained ability which further undermine the claimant's allegations of severity. The claimant is able to attend to her own personal care, drive a car, exercise, do yoga, do laundry, prepare meals, shop in stores, manage finances. (Exhibit 3E; 7F/19; Testimony). These retained abilities further support the residual functional capacity and suggest the claimant could sustain work with restrictions outlined in the above residual functional capacity.

Under the current rules for evaluating medical evidence in claims filed after March 27, 2017, I did not provide articulation about evidence that is neither inherently valuable nor persuasive. This includes issues reserved to the Commissioner, such as whether or not a claimant is disabled or able to work or whether or not the claimant meets or equals a listing, and decisions by other governmental or non-governmental entities (20 CFR 416.920b(c)(1) and (3)). (*See* Exhibit 2F/3; 7F/28, 63). Nor did I provide articulation for statements that are not provided by medical sources or that do not state what the claimant could do despite her impairments. (20 CFR 416.913(a)(2)).

As for the opinion evidence regarding the claimant's mental functioning, I have considered the psychiatric review technique set forth by R. Warren, M.D. and Barney Greenspan, Ph.D. (Exhibit 1A; 3A). Dr. Warren and Dr. Greenspan opined moderate limitations in the area of concentrate, persist, or maintain pace and no limitations in the remaining paragraph B criteria. They further opined that the claimant is capable performing semi-complex tasks. They supported their opinions with evidence of progress in psychotherapy, decrease in depressed affect, and improvement in anxiety issues. (Exhibit 3A/4). I find that the evidence available at the hearing level, showing cooperative behavior with normal memory, intact judgment, average intellect, normal attention and concentration, normal thought process, normal speech, and good insight. (Exhibit 6F/21, 24, 26, 28, 31; 7F/7, 19, 22, 24, 26, 41). Accordingly, I find these opinions generally persuasive. However, based on the claimant's complaints regarding interaction as well as reported concentration issues, I have included additional social limitations to occasional contact with the public, co-workers and supervisors as well as restrictions on production requirements.

I have considered the opinion provided by Jeff Rose, Ph.D. (Exhibit 1F). Dr. Rose opined that the claimant has mostly unlimited to good ability to understand, remember, and carry out instructions; interact with others; and respond appropriately to changes in a work setting. He opined fair ability to complete a normal workday or workweek. Dr. Rose supported his opinion with a mental status examination showing normal speech, cooperative behavior, intact concentration, normal memory, above average intelligence, anxious/depressed mood, intact judgment, and goal directed thought process. I find this opinion mostly persuasive as it is consistent with the State Agency opinion at Exhibit 1A;

> 3A. However, as stated above, based on the claimant's testimony and later treatment records showing issues forming and maintaining social connections, reports of poor concentration and low motivation, I have found the claimant more limited and included appropriate accommodations as outlined in the above residual functional capacity. (Exhibit 7F/2, 10, 32).
>     In sum, the above residual functional capacity assessment is supported by the objective medical evidence and the record as a whole. Even though the record indicates that the claimant did have some limitations due to her impairments, the record also shows that the claimant's impairments were not as limiting as she has alleged, and she maintained the ability to perform work related activities within the residual functional capacity assigned.

AR 27-30.

### IV.     Analysis

Plaintiff raises a single issue on review, asserting that the ALJ's decision was not supported by substantial evidence because, in determining plaintiff's residual functioning capacity, the ALJ erroneously discounted the medical opinions of Dr. Rose with evidence that post-dated his report, without developing the record by obtaining an additional psychological consultative examination that could have assessed the newer evidence. ECF No. 15 at 10-14 (citing AR 29-30). In so doing, plaintiff argues, the ALJ improperly acted as a de facto medical expert, and this was not harmless. *Ibid.* Plaintiff requests the agency's decision be vacated and the matter remanded. The court concludes plaintiff has not met her burden to demonstrate relief is merited.

The record does not support plaintiff's contention that the ALJ "implicitly rejected" the opinion of Dr. Rose. *See* ECF No. 15 at 11. Rather, the record indicates that the ALJ considered Dr. Rose's opinion and gave it weight, while also endeavoring to reconcile it with the additional information supplied by plaintiff's testimony and later treatment records. AR 29-30. This was not error, but rather reflected the ALJ undertaking the very analysis the regulations require of him. 20 C.F.R. §§ 404.1520(e), 404.1520c(a), 404.1527(d)(2), 404.1545(a), 404.1546(c); 416.945(a); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various

reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict"); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); *see generally Vertigan*, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

Plaintiff has also not shown that the language of the ALJ's decision indicates that the ALJ should have initiated additional fact-finding prior to rendering a decision. To be sure, in a social security case the ALJ "has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen,* 80 F.3d at 1288, and *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir.1983)). This duty is heightened where, as here, the claimant was unrepresented. *Tonapetyan*, 242 F.3d at 1150; *Cox v. Califano,* 587 F.2d 988, 991 (9th Cir. 1978). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry," *Smolen,* 80 F.3d at 1288, which may be discharged in several ways, including subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tonapetyan*, 242 F.3d at 1150; *Tidwell v. Apfel,* 161 F.3d 599, 602 (9th Cir. 1998); *Armstrong v. Comm'r of Soc. Sec. Admin.,* 160 F.3d 587, 590 (9th Cir.1998); *Smolen,* 80 F.3d at 1288.

Here, plaintiff argues that the ALJ's discussion of Dr. Rose's report indicates ambiguity in the factual record that triggered the duty for additional fact-finding, insofar as the ALJ reported that Dr. Rose's report did not fully accord with reports of plaintiff's functioning described in later treatment records, nor with plaintiff's own testimony. ECF No. 15 at 13. Plaintiff likens the ALJ's analysis to cases where the ALJ has erroneously endeavored to interpret raw clinical data rather than develop the record with the opinion of a medical professional who has assessed the raw data. ECF No. 15 at 10-11. For example, in *Rivera v. Berryhill*, No. ED CV 16-791-SP,

2017 WL 5054656, at *4 (C.D. Cal. Oct. 31, 2017), the court held the ALJ erred in his RFC determination because it was based on no opinions from any medical professional who had assessed the claimant or reviewed his records, but rather was based solely on the ALJ's own interpretation of the claimant's MRIs and medical treatment notes. For this reason, the record before the ALJ "did not provide sufficient indications of plaintiff's functional limitations[,] [a]nd the few findings that could translate to function limitations were ambiguous," such that the RFC was not based on substantial evidence. *Id.* at *5.

The record does not support plaintiff's interpretation that the ALJ similarly supplanted medical opinions with his own or that he failed to resolve an ambiguity that arose that was critical to his RFC determination. The ALJ did not disregard Dr. Rose's opinions and instead "acted as his own medical expert," *see Miller v. Astrue*, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010), by considering the raw data and notes contained in Dr. Rose's records. Rather, the ALJ appropriately and properly considered and gave weight to Dr. Rose's medical opinion, while also considering the basis of his opinion when deciding how much weight to give it. *See* AR 29-30. This not only was proper, but was required of the ALJ in synthesizing the medical evidence before him. *See, e.g.*, *Tommasetti*, 533 F.3d at 1041-42; *Lingenfelter*, 504 F.3d at 1042; *Benton*, 331 F.3d at 1040. The fact that the ALJ observed that more recent evidence indicated plaintiff suffered from greater limitations than even Dr. Rose had found, *see* AR 29-30, did not alone create an ambiguity requiring further factual development. There was no ambiguity intrinsic to Dr. Rose's opinion. *See, e.g., Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1107 (C.D. Cal. 2008) (finding ambiguity requiring further evidentiary development where one doctor's clinical opinion appeared to contradict his own clinical findings). That additional evidence was generated after Dr. Rose's report does not, in itself, create an ambiguity in the record triggering the ALJ's duty to develop the record further. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *see, e.g., Stivers v. Saul*, No. 1:19-CV-01110-BAM, 2021 WL 1193794, at *8 (E.D. Cal. Mar. 30, 2021); *Lamas v. Saul*, No. 1:19-CV-00852-BAM, 2020 WL 6561306, at *10 (E.D. Cal. Nov. 9, 2020); *Charney v. Colvin*, 2014 WL 1152961, at *7 (C.D. Cal. Mar. 21, 2014), *aff'd*, 647 F. App'x 762 (9th Cir. 2016). Simply, the ALJ's approach was entirely consistent with his

1  obligation to consider "all the relevant evidence" when determining plaintiff's RFC.  *See* 20
2  C.F.R. § 404.1545(a)(1).

3        Finally, plaintiff fails to show that any error by the ALJ harmed her.  *See Shinseki*, 556
4  U.S. at 409; *Stout*, 454 F.3d at 1055-56.  In the portion of the ALJ's findings at issue, the ALJ
5  largely credited Dr. Rose's clinical opinion, only deviating from Dr. Rose by finding plaintiff
6  "more limited" in her functioning than Dr. Rose had found.  AR 30.  As such, it is unclear how
7  the ALJ's error, if any, was not harmless to the RFC determination nor, more generally, to the
8  ALJ's decision that plaintiff was not disabled.  *See Gonzalez v. Kijakazi*, No. 1:21-CV-01676-
9  SKO, 2023 WL 6164086, at *7 (E.D. Cal. Sept. 21, 2023) ("plaintiff can hardly fault the ALJ for
10  giving him the benefit of the doubt and assessing an RFC that is more favorable to plaintiff than
11  most of the medical opinions in the record"); *Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-
12  KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014) (same).  Plaintiff makes no
13  argument to explain how, had the ALJ hewn strictly to only those limitations identified by Dr.
14  Rose or had he ordered further evidentiary development, the ALJ's determinations would have
15  been different and more favorable to plaintiff.  *See Shinseki*, 556 U.S. at 409; *Stout*, 454 F.3d at
16  1055-56; *see generally Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).
17  On this additional ground, therefore, plaintiff fails to show that the ALJ's decision should be
18  vacated and the matter remanded.

19        In sum, the ALJ's decision was supported by substantial evidence at each of the five steps
20  of its required analysis.  *Stout*, 454 F.3d at 1052; 42 U.S.C. § 405(g).  Plaintiff has not shown that
21  the ALJ erred in determining her RFC by failing to give due weight to the opinions of Dr. Rose or
22  failing to require further evidentiary development relative to his opinions.  The totality of the
23  ALJ's determination of plaintiff's RFC indicates that he aptly considered all medical evidence
24  before him and properly relied on objective medical data, synthesizing and weighing it in light of
25  the entire record.  *See* 20 C.F.R. § 404.1529(c); *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir.
26  2012).  As such, plaintiff has provided no basis to reverse the agency's decision.  *See* 42 U.S.C. §
27  405(g).
28  ////

**V.      Conclusion**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is denied;

2. Defendant's cross-motion for summary judgment (ECF No. 19) is granted;

3. The Clerk of the Court shall enter judgment for defendant and close this case.

Dated: June 13, 2025

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE